Our second case is 24-1054, 3074 Centreville LLC v. M.A. Cohen & Co., Mr. Doble. Good morning. May it please the Court, Gabriel Doble representing the appellants, Mr. Cohen and his company, M.A. Cohen & Co., Inc. The District Court's summary judgment ruling should be reversed. I'd like to start with the breach of contract claim and then move to the quantum merit claim. When parties orally express agreement on material terms with the intent to later reduce their agreement to a formal writing, disagreements over the terms of writing do not negate the existence of the initial oral contract. California law is very clear on that point. So did any of the written agreement drafts recite the existence of an oral agreement? No, they don't, Your Honor, and that's because the parties understood that they were reducing their oral contract to a written agreement. It's not required for the written drafts to refer to an oral agreement for there to be a separate oral agreement. That doesn't show, as a matter of law, that there was no oral contract. It certainly would have helped your case. I agree it would have helped our case, Your Honor, but that's that's an issue for the jury to decide. How do you reconcile Mr. Cohen being represented by counsel and references to counsel in these back and forth correspondence and no mention by counsel of any oral agreement? Most of the parties' conversations, Your Honor, took place orally, in oral conversations. Those were their discussions over the terms of the contract. The email correspondence was pretty much just sending drafts back and forth. And what the District Court did here in relying on that exchange of written drafts to show that there was no oral contract, as a matter of law, was it thought that the exchange of written drafts blatantly contradicted Mr. Cohen's testimony, which established the existence of an oral contract. That's exactly what California law says you can't do. The California Supreme Court, in the Patel case, said that subsequent disagreements should not be taken as evidence that no initial contract was reached. Now, Mr. Cohen's testimony is that in April 2017, the parties met and they orally expressed mutual assent to terms that were reasonably certain. That testimony has to be credited at summary judgment. The District Court didn't credit that testimony. It disregarded it. And the reason it thought it could do that is because, in its view, the exchange of written drafts blatantly contradicted the existence of an oral contract. It thought that because the parties exchanged written drafts with additional and materially different terms, that showed that no oral contract existed as a matter of law. But that's exactly what California law says you can't do. It happens all the time that parties reach an initial oral contract and then attempt to reduce that contract to a formal writing and disagree about the terms of that formal writing. For example, because one party tries to insert a term that the parties never agreed to in the first place. So what do you say was the final oral contract that the parties agreed to? Because there were a number of discussions in April and then in October and there were some differences, right, in those conversations. So what is the, in your view, the final oral contract here? The final oral contract, as a result of the November modification, was that Weber would give Cohen a 20% profit participation interest in the Herndon property and in future properties that his business acquired. And that Cohen would accept that 20% interest as compensation for his past eight years of advisory services and for the advisory services remaining to eliminate the Herndon debt. That was a modification of the April 2017 contract, which had the same terms, except rather than a profit participation interest, it was an equity interest. So am I remembering the record correctly that at some point later, after this November discussion, that Mr. Cohen sent a proposal for a 25% profits interest? That's correct, Your Honor, and I think this is part of where the District Court got a little bit mixed up on the facts. That 25% was a proposed modification as a result of new information that the parties learned after they already entered their April 2017 contract. That new information was that another guy, Mike Michaels, was bowing out. He was not going to accept his 20% interest. The parties learned that, I think, early fall 2017. And so then Mr. Cohen proposed, okay, how do we divide up this extra 20%? Let's give five to me and 15 to you. So let's say 25-75. Weber said he'd think about it and that Cohen should send a draft reflecting that proposed change. So that's what Mr. Cohen sent. Afterward, when they discussed, Weber said, actually I want to keep your interest at 20%. And so that's what the parties agreed on, that it would be a 20% profit participation interest. And that was in return for two things. One, the past work that was done in support of the Herndon financing or maybe even more work. Which, if standing alone, do you concede that that would not be sufficient consideration because it was for past services? No, I don't, Your Honor. The rule is that past services are only insufficient when the consideration goes beyond the party's existing obligation. Back in 2009, when the parties met, they agreed that Mr. Cohen's advisory services would be compensated with a percent interest of the business if and when it had value. So all of Mr. Cohen's work during those eight years was done with the mutual understanding that that work was going to be compensated with a percent interest. By agreeing... Did they know what percent interest from your standpoint? They hadn't decided that in 2009. That was the point of the 2017 conversation, once the business had value. Well, standing alone, then, that's not a sufficient oral contract, right? Without that number, that's not an agreement, oral or otherwise. We're not relying, for this appeal, we're not relying on the 2009. I know you're not, but you're relying on it now to say that because of that, there's an exception to the past consideration rule. Right, so regardless of whether there was an actual contract in 2009, Mr. Cohen performed those services with the understanding that they would be compensated with a 20% interest. So at a minimum, he had a claim for quantum merit. Giving up that claim for quantum merit is consideration for a contract. When a party gives up a legal right, that's consideration. That's why settlements are enforceable. So that part of your... Maybe I'm misunderstanding. Are you saying that the services between 2009 and 2017 comprise the quantum merit portion of your claim, or do you say that's independent consideration for the 2017 agreement? That's independent consideration for the 2017 agreement. The quantum merit part of our claim is in the alternative, if the jury finds that there was no oral contract. But the... Mr. Cohen accepting... Why wouldn't that be an agreement to agree? If you don't know what you're going to get, I'm just, I'm not quite sure how that can be a valid contract. Well, we're not saying that the 2009 agreement was a valid contract. We're focused on the 2017 contract in which the parties described precisely what they were going to get. Weber said, if you finish up this Herndon deal, I will give you a 20% equity interest in my company. And that would be compensation for those eight years of past services and the services needed to eliminate the Herndon debt. And you say, when you say if you finish up the Herndon deal, but what was $150,000 for, if not for payment for finishing up the Herndon deal? That was for the loan brokering services that Mr. Cohen... But what beyond loan brokering do you say that he did? Well, loan brokering comes in only at the very end of the process. It happens once you've got a property tied up, a contract, a purchase price, you know the loan amount you need, then you go out and hire a loan broker. And the loan broker identifies potential lenders, contacts those lenders, and passes information back and forth between the borrower and the lender. A loan broker doesn't do any of the other work to get to that point. They don't identify and select properties for acquisition. They don't bring the business to the point where potential capital sources or lenders might be interested in that business. They don't develop detailed business plans. They don't negotiate contracts. They don't draft the documents necessary to provide to the lenders. That all happens, the owner of the business does that before engaging a loan broker. And those are the services that Mr. Cohen provided. Those are his real estate advisory services. He also separately provided loan brokering services, and those were compensated with a commission fee. But the real estate advisory services, that 20% interest, was for something different. And that's quite clear because that 20% interest was worth $4 million in 2017. Whoever can't explain why he would offer Mr. Cohen an interest worth $4 million for loan brokering services, he could go out and get someone else to do for less than a 20th of that amount. And his loan brokering theory also doesn't add up because after Mr. Cohen was already paid that commission, the parties continued to document that 20% interest, which shows that it was for services other than the loan brokering services. Can I ask about the back and forth email traffic that you say really doesn't affect the legitimacy or the validity of an oral agreement? But one of the, and there was more than one I think, but one of the emails that got my attention was one from Mr. Weber in September of 2017 where he states that he has to know by the weekend whether or not you would become a partner. I mean, unless he somehow predicted that this would end up here someday, that seems like a pretty contemporaneous assertion that there really isn't an agreement, that the parties are still trying to figure out exactly what the terms of the agreement are and putting the onus on your client to tell him whether or not he wants to be a part of this deal. Well, Mr. Weber can make that argument to the jury, but that doesn't blatantly contradict Cohen's testimony because there are other inferences the jury could draw from that email. One is that email was sent to both Mr. Cohen and Mike Michaels. A jury could conclude that Weber's uncertainty was directed to Mike Michaels who actually ultimately didn't become a partner. And that's a reasonable inference because Weber can't reasonably claim he wasn't sure whether Cohen wanted to be a partner. Cohen had already worked eight years based on the understanding that he was going to be compensated with a percent interest. Well, did you, or did your, not you, but did your client then respond, you can't reasonably claim that I'm not a partner in response to that email? No, the point of that email was to transmit the first draft of the written document. No, what I'm saying is when your client got that email, maybe if in fact he really thought that there was an agreement, wouldn't he have said, you know, by the way, we have an agreement. We're just dotting the i's and crossing the t's here. Well, after he got that email with the draft, he called up Weber. They had a phone conversation. In that conversation, Mr. Cohen said, these extra terms that you're adding are not consistent with our agreement. These are unacceptable. So I'm not going to sign it. So he didn't respond in writing to that email. They had an oral conversation. And I'd point the court also to the emails that Mr. Cohen sent to potential lenders during that time, after the parties had reached their April 2017 oral agreement. He said consistently in his emails, I'm going to have a 20% interest in this business. From that evidence alone, the jury could infer that they had, in fact, reached an agreement that Mr. Cohen would have a 20% interest. So this case comes down to competing testimony about what happened in oral conversations and competing inferences that can be drawn from written documents. Those written documents. Is there any, is there anything in the record that says those conversations over the phone, any of that was memorialized? I'm not sure what you mean by memorialized. In writing regarding the, you said they had these conversations over the phone. I mean, is there any reference anywhere in writing? Yes, in May 2022, Mr. Cohen sent an email, which is at JA729, which he says to Weber, I'd like to complete documentation of our agreement. That is, finish taking our existing agreement and reducing it to written form. And he says to Weber, you've stated over the years that we don't need to rush to sign this agreement because you've been acting consistent with your promise, because you've been, because you honor your oral promises, and because we have an agreement. That's in writing. The, also some of the written exchanges, for example, in 2018, refer to, you know, pursuant to our conversation last Tuesday. Those written documents refer to the oral conversations that the parties had. The jury has to be allowed to decide whether the written exchanges were simply written exchanges because the parties didn't have any oral agreement, or whether those were attempts to reduce the party's existing oral contract to a formal writing. Thank you, Mr. Doble. Thank you. Mr. Killian. Good morning, your honors. May it please the court. Brian Killian for the Apple East. The district court got this one right. There's no genuine dispute as to the material facts that Cohen would need to prove his claims to recover a 20% of the profits that Weber's business has earned over the years. These two highly sophisticated businessmen, along with their lawyers, spent a lot of time negotiating over various ways in which Cohen could acquire the interest that he wanted. But ultimately, they never mutually, objectively, and simultaneously agreed to all the necessary terms to complete that agreement. Under California law, a court can render judgment as a matter of law on the non-existence of a contract based on the objective contemporaneous written records. And as the court has already explored, the parties had a number of back-and-forth emails exchanging drafts in the end of 2017. Every one of those drafts had different consideration for the parties to provide. And even when the parties were talking about profit, they were not talking about profit defined in the same way. They defined in those contracts a cash distribution interest or a net cash interest, which they each were characterizing as profit in a different way of calculating it. And none of those contracts was ever signed. Moreover, as the court noted, there are none of the telltale signs that the parties reached an oral agreement. No one said, we've already reached an oral agreement, let's just write this down. Or no one said, that draft you sent me doesn't look like what we talked about. And in fact, judging... Well, that's not an absolute requirement under the law, right? But you're just saying that's further indicia of the fact that the parties never agreed. Correct. And I think the more important point, though, Judge Diaz, along these lines, is that the parties individually expressed their understanding that the other side had not yet agreed. Judge Diaz, you mentioned the email that my client sent to Mr. Cohen in September. It's at page 401 of the joint appendix, where he wrote and said, it's not clear what your position is. Do you want to move forward? And I respectfully have to disagree with my adversary's characterization of that email as potentially being an email only to Mr. Michael. It says, gentlemen, I received this draft. I need to know, I must know whether you desire to move forward. He's referring to both of them simultaneously, not to just one of the two. Similarly, Mr. Cohen's lawyer wrote an email that said the parties were working, quote, on several key issues. This is at JA 534. In other words, representatives from both sides in the midst of this back and forth expressed to each other at that time that their own side did not perceive that the other side had reached an agreement. They both reflected that this was still an open arrangement. I understand the argument that counsel made this morning. He contends that California law prohibits, I may have misunderstood him, California law prohibits a court from taking into consideration on the question of whether there's an oral contract, the fact that the oral contract was never mentioned in later written documents. Is that an accurate statement? I believe my friend on the other side is overstating the Senate California law on that. In cases like Patel and the CSAA case on which they rely, both sides had admitted and agreed that there was an original contract between them. But what happened subsequently is that when they were trying to write it down, as he said, someone was inserting provisions that both sides had recognized was not a part of the original agreement. And as the Court of Appeals said in the CSAA case, when that happens, you don't have to sign the subsequent contract. It doesn't diminish the existence of the earlier contract. But the key fact in those cases was that the existence of the original agreement was undisputed by the parties. Here, however, there is no original agreement. And so the question whether the parties were able to write it down is a material fact to deciding whether that existed for two reasons. When you say that, are you saying that the agreement as it exists, even taking it in the light most favorable to Mr. Cohen, the oral agreement, just doesn't add up to a contract? Is that your argument? There's a couple aspects to that, Judge Diaz, yes. One is that the material terms, all, and it may be specific, necessary terms, because what Mr. Cohen was going to give, what Mr. Weber was going to give, that's the consideration. If those are not resolved, there cannot be a contract. A court cannot just fill that in later on. That is the essence of the agreement. So it's more than a material term. It's a necessary term. And that was never resolved by the parties objectively, mutually, and simultaneously during the course of that process. So it's more than just his recollection is incomplete or wrong or that he doesn't have enough evidence to be specific. It's that he doesn't have enough evidence of the material terms that is necessary to create the type of contract that he claims it was created by the parties. The court explored with Mr. Cohen's counsel the issue of consideration. California law is clear that where someone just offers a gift for prior services, that's not a contract. And so in the court below, it was very important to Mr. Cohen's theory of the case that not only was this alleged agreement for the prior eight years of work, but also for the closing of the Herndon loan. And then when it came time to close the Herndon loan, and when it did close, Mr. Cohen didn't say, where's my equity, where's my profit? He issued an invoice for $150,000, which is the same commission that he was entitled to under the very longstanding commission-based arrangement that the parties had. That's key because it shows that Mr. Cohen himself also recognized that there was no change in his status vis-a-vis Mr. Weber. Instead, he collected the commission for that work that he would have been entitled to had the parties never reached an agreement. The other component of that consideration was the years that he had spent working on this project up until the date of the alleged oral agreement. And he says that even though past consideration in the abstract might not be sufficient, if you give up a claim in quantum merit, an expectation of a contract, that that's good enough. Is that what California law says? Not in our view, Your Honor. The cases say that you have to be giving up more than a legal right, and quantum merit is not a legal right. There's no evidence that this was a settlement between the parties over a claim for quantum merit. Quantum merit is when court inequity, when a person doesn't have a legal right, says, but, you know, out of fairness, you deserve a little something. And so we don't think that he was settling a nine-year running quantum merit claim in early 2017 when he alleged that he was, you know, getting a profit or equity interest at that time. Of course, he makes a claim here now for quantum merit. Sure, he does make a quantum merit claim in this case. This is part of the reason why reaching all the way back to the beginning of time doesn't work under quantum merit. But the law in California actually is on quantum merit, is very clear that a party cannot obtain profit or equity through quantum merit. This is in the Maglicka v. Maglicka case that we cite in our briefs. The court says that that sort of interest in a business is, quote, always the result of specific bargaining. Quantum merit is about giving someone the reasonable value of the services that they provide. And giving an equity or profit interest in someone else's business is not the reasonable value of the services provided. That has to be done by contract in California. Even though quantum merit is an equitable remedy, wouldn't the argument over whether profits or equity interest or some hourly compensation for other services are rendered, isn't that in effect, even though it's an equity, a damages question? It doesn't go to the existence of whether or not the elements of quantum merit have been proven? No, because I believe, Your Honor, that in this case, he is seeking very clearly the 20% profit interest. This is not a quantum merit claim where he's asking for the hourly rate for phone calls that he made in the two-year period before the start of this case. The ad damnum in his complaint and the arguments that he has made for every one of the causes of action is for a 20% profit interest. So for the breach of contract, promissory estoppel, and quantum merit, that's the relief he seeks. And so in our view, this is more than just a measure of damages issue. The question is the specific relief that he's seeking in this case. Can he get it through quantum merit? And the answer is no. As a matter of law, he cannot. So it's not just a quantification question. We think it goes to the heart of the case that he brought here. Would another way to say that from your standpoint be that if there is a quantum merit claim, that he has pled himself out of a recovery because the method of compensation is prohibited? Yes, that's our view as to that. Now, the district court also said that as to quantum merit, in the two-year period before the filing of the case, technically with a little bit longer because the parties had a tolling agreement. So we'll call it within the limitations period. Mr. Cohen had engaged in only six specific acts on behalf of the Weber businesses. But he cites this Johnstone case. We cite the Johnstone case. I mean, Johnstone case and says that it regarding, I guess, the last service and then incorporating all of this other. It was, I guess, a group of services. Yeah, Johnstone case was actually very similar to this one where two men went into business with each other to create medical devices. And one was not given compensation for it. And then near the very end of that, at the end, he filed a quantum merit claim asking for something. And the court, in the California court, looked back only during the limitations period and said you provided some discreet services in that time period to be sure. But those services were not dependent upon or contingent upon the sort of work that you had done in connection with this business in the past. They were discreet services. So those discreet services did not provide a continuation that would allow sort of this understanding that there was just one service provided over a five or seven-year period. The court said you only can get recovery for the discreet services provided within the limitations period. And that's what happened here. He provided six discreet services in response to our interrogatory request asking what did you do under this alleged real estate advisory service. He provided six within the limitation period. And then at his deposition, and this is at page 196 to 198 of the joint appendix, he admitted that each of those services was in connection with a loan. He was paid for three of those six services under the commission-based loan brokering agreement that the parties had always had. And the other three he wasn't paid because he didn't close a loan. In other words, those were not truly real estate advisory services. They were loan brokering services. So the only work he did within the limitations period was not the kind of work that he would wish would connect back all the way to 2009 to this period of real estate advisory services. And that's the ground on which the district court found that the quantum merit claim lacked and rendered judgment as a matter of law. So you're saying there was no unjust enrichment, I guess, on the part of the   The services that Mr. Cohen provided in the limitations period were either compensated pursuant to the commission agreement or they weren't pursuant to the commission agreement because no loan was closed. So he got the benefit of his bargain for those services as well. As I understand Mr. Doble's bottom line argument here is that because we're dealing with an oral contract, inevitably what this is all about is a battle of credibility between two individuals. One who says, I had an oral contract, here are the terms. Another who says, no, we didn't. We didn't agree on that. And I suppose, I guess your argument is twofold. First, even if you assume the terms that Mr. Cohen has suggested, they're legally insufficient. But if you disagree with that and think that they are, then this is a jury question, right? No. I think there's two other responses to that, Judge Diaz. One is independent of whether the parties sufficiently reached all agreement on all the necessary and material terms, which is our primary argument, right? That consideration was never really finalized. The type of profit and the measure of profit was never actually finalized by the parties. Putting that aside, the parties also separately manifested their desire, manifested, objectively manifested their desire that they would not be bound unless there was a writing. And under California law, where the parties objectively manifest through their actions or words that they will not be bound until there's a writing, then there's no contract. This is the Lewis Lesser case that we cite in our briefs. And here the parties objectively manifested that because they were swapping drafts back and forth, because they hired lawyers to do so. And maybe the capstone on this is that each of the individuals in this case testified at JA 194 and JA 386 that they went through this whole process because they wanted a writing to memorialize their contract. They were not going to be bound without that. So even if they reached a meeting of the minds orally as to all necessary terms, and we don't think the evidence shows that, but even if they did, they also wanted to have a writing. And because they were unable to get that writing, there was no contract. So for that reason as well, this is not a jury question. The objective evidence, which again is what California law under the Bustamante case says is enough for a court to render judgment as a matter of law, shows that there was no mutual, simultaneous objective meeting of the minds to all necessary terms. And when you say that the parties intended to be bound, did not intend to be bound unless there was a writing, there's no express statement of that fact, right? You have to sort of infer that from the exchange written and oral. Is that your point? Yes. In the Lewis Lesser case, the court did say that the parties can manifest that. They can manifest the intent to be bound through their actions, and that's the only inference that can be drawn from all the effort that the parties went through here on breach of contract. So just to be clear, we argue that the contract is incomplete. There's no evidence of all the necessary terms that the parties, as a matter of law, wanted a writing, and they didn't get that writing, so there's no contract. And then we have the argument about consideration, that the prior work is not sufficient consideration, and that the future work, closing of the Herndon loan, Mr. Cohen billed $150,000 for that, which he only did because the parties never actually had changed their relationship. They had never had the contract that would have gotten him 20% profit or 20% equity when he closed the loan. He closed the loan, issued the invoice, because nothing truly had changed. And for that reason as well, it's evident that there was no consideration actually exchanged vis-à-vis that contract. Unless the court has any further questions, we ask that the district court's decision be fully affirmed. Thank you, Mr. Killian. Thank you. Mr. Doble. The Lewis Lesser case that counsel relies on itself says, and I'm quoting, preliminary negotiations ordinarily result in a binding contract when all of the terms are definitely understood, even though the parties intend to later execute a formal writing. And in Lewis Lesser, the objective manifestation of intent not to be bound were expressed statements by the plaintiffs before the letters were signed, telling the defendants that they weren't binding until they signed a formal writing. Judge Diaz, as you point out, there's no such expressed statement in this case. Counsel relies purely on the subsequent exchange of written drafts. But that's entirely consistent with what Cohen says happened here, which is that the parties reached an initial agreement on oral terms and then attempted to negotiate a formal writing. And when parties don't finalize the terms of that formal writing, that's fine. The oral agreement still remains binding. And that oral agreement was complete on its own terms. With respect to the Quantum Meroweth claim, we're not trying to obtain an equity or a profit. We're seeking damages for the reasonable value of the services. And what California law says, including the Maglica case that counsel relies on, and also the Cazares and Watson case, which we cite in our brief, is that the best evidence of the reasonable value of the services is the value that the parties put on those services. Here, that value is a 20% interest. So we're not asking the court to order Weber to give Cohen a 20% interest of his company. We're asking the court to order Weber to give Cohen the value of a 20% interest. What about the statute of limitations issue that you have? Yeah. In response to his position that there's no, I guess, unjust enrichment because of the six interactions that would have occurred within the statute, three of them, I think he's saying, were paid through brokerage fees and the other three didn't close. So I want to make a couple points on this. And first I'd like to make a point that I think was in the briefing but didn't come out as strongly as it could have. A quantum merit claim doesn't accrue until the payment is wrongfully withheld. Here, payment wasn't wrongfully withheld until May 2022 when Weber told Cohen for the first time, I'm not going to give you this 20% interest. So regardless of the fight over what services counted as loan brokering and what counted as real estate advisory services, under California law, the quantum merit claim didn't accrue until 2022. Now with respect to the services, that's an additional reason that the quantum merit claim didn't accrue until that point. The statute of limitations doesn't begin to run until the last services are rendered, as Your Honor pointed out. Here, counsel ignores Cohen's testimony that in addition to the specific services he listed in that interrogatory response, he also, in that same interrogatory response and in his deposition, said that he was available for Weber 24 hours a day, seven days a week, and that he spent hundreds of hours on the phone with Weber providing these advisory services. And he testifies that he was rendering those services right up until May 2022 when Weber suddenly repudiated. With respect to those specific listed services, those services were not loan brokering services. They were real estate advisory services. And Cohen's testimony on what counts as real estate advisory services and what counts as loan brokering is undisputed for the purpose of this summary judgment motion. And I'd just like to give one example of those specific listed services. June 2021, discuss and advise on potential acquisition of property in Aurora, Colorado. A loan broker does not advise clients on which properties they should acquire. That's an advisory services that Mr. Cohen provided as part of his separate expertise. So even if you just look at the specific listed services, Mr. Cohen provided advisory services after April 25, 2021. The bottom line here is that Mr. Cohen provided 13 years of advisory services that brought Weber's business from below $0 to $115 million. And he hasn't been compensated one cent for those services. So for those reasons, we ask this court to allow Mr. Cohen to have his day in court and to attempt to prove to the jury that he should be compensated for those services. Thank you, Mr. Doble. Thank you. Thank you both for your fine arguments. We're going to come down and brief counsel, take a very short recess, and then come back for our third case. This honorable court will take a brief recess.
judges: Albert Diaz, G. Steven Agee, DeAndrea Gist Benjamin